**Danilo DeGUZMAN and Daisy DeGuzman, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CIV. 99–3318(WGB).**

United States District Court, D. New Jersey.

May 24, 2001.

Poe & Freireich, P.A., Jay J. Freireich, Michael J. Sullivan, Florham Park, NJ, for Plaintiffs.

Robert J. Cleary, United States Attorney, Susan Cassell, Assistant U.S. Attorney, U.S. Attorney's Office, District of New Jersey, Newark, NJ, Richard G. Jacobus, Gregory S. Hrebiniak, United States Department of Justice (Tax Division), Washington, DC, for Defendant.

## OPINION

BASSLER, District Judge.

The United States of America ("Defendant") moves for summary judgement pursuant to Fed.R.Civ.P. 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1). For the reasons set forth in this opinion, Defendant's motion for summary judgment is hereby **granted**.

## BACKGROUND

### A. PROCEDURAL HISTORY

On July 14, 1999, Mr. and Mrs. DeGuzman ("Plaintiffs") filed a complaint in the United States District Court for the District of New Jersey against the Defendant seeking a refund of taxes that Plaintiffs believe were wrongly assessed against them by the Internal Revenue Service ("IRS"). Defendant filed its answer on October 20, 1999. On August 18, 2000 Defendant moved for summary judgment.

### B. STATEMENT OF FACTS

The material facts as set forth in this opinion are uncontested. Plaintiffs filed joint tax returns with the IRS for years 1994 and 1995. (*See* Stip. ¶ 2.) In 1994, Plaintiff Mr. DeGuzman reported no taxable income while Plaintiff Mrs. DeGuzman reported a taxable income of $351,613 earned from her medical practice ($200,000 in taxable wages and $151,613 from Plaintiffs' wholly owned S Corporation "Daisy DeGuzman, M.D., P.A.") (*See* Stip. ¶¶ 11, 68.) Furthermore, Plaintiffs claimed $53,174 in income tax deductions on account of real estate losses sustained in 1994. (*See* Stip. ¶ 3.) In 1995, Plaintiff Mr. DeGuzman reported no taxable income while Plaintiff Mrs. DeGuzman reported a taxable income of $380,352 earned from her medical practice ($300,000 in taxable wages and $80,352 from Plaintiffs' wholly owned S Corporation "Daisy DeGuzman, M.D., P.A.") (*See* Stip. ¶¶ 12, 68.) Plaintiffs claimed $44,546 in income tax deductions on account of real estate losses sustained in 1995. (*See* Stip. ¶ 4.)

The IRS refused to recognize Plaintiffs' claimed income tax deductions of $53,174 for 1994 and $44,546 for 1995. (*See* Stip. ¶ 5.) The IRS determined that such deductions were improper pursuant to 26 U.S.C. § 469. Under this section of the Internal Revenue Code ("IRC"), taxpayers are forbidden from deducting any losses they have incurred from "passive activities" (i.e., rental activities or trade or business activities) in which the taxpayers did not materially participate. The IRS alleged that such deductions claimed by Plaintiffs were being made to "shelter" the substantial income that Plaintiff Mrs. DeGuzman earned from her medical practice for years 1994 and 1995. (*See* Def. Brief 1.)

Plaintiffs brought suit against the United States contesting the IRS's refusal to recognize the deductions involving the losses they suffered in 1994 and 1995 from their real estate holdings. (*See* Stip. ¶ 6.)

It is necessary at this point to illustrate the real property holdings involved in this case before addressing the merits of Defendant's motion for summary judgment.

During the principal years of 1994 and 1995, Plaintiffs were the owners of numerous real estate properties. The properties relevant for purposes of this motion can be categorized into two distinct groups: properties leased to third parties and properties not leased to third parties. Properties owned by Plaintiffs and leased to third parties include: (1.) a suite in Orlando, Fla.; (2.) a townhouse in Staten Island, NY; (3.) a house in Bloomfield, NJ; (4.) an apartment in Jersey City, NJ; (5.) two condominium units in Roselle, NJ; and (6.) a condominium unit in Atlantic City, NJ. Properties owned by Plaintiffs and not leased to third parties include: (1.) an office condominium in Newark, NJ used by

Plaintiff Mrs. DeGuzman for her medical practice; (2.) a vacant bank in East Orange, NJ; and (3.) an undeveloped lot in West Caldwell, NJ. Aside from the aforementioned properties, Plaintiff Mrs. DeGuzman also leased an office space in Newark, NJ as a second medical office.

During 1994 and 1995, Plaintiff Mr. DeGuzman, a licensed real estate agent, was solely responsible for managing the finances and maintenance of all these real estate properties. (*See* Stip. ¶ 67.) Plaintiff Mrs. DeGuzman did not manage any of these properties because of the extensive hours she spent practicing medicine. In addition, she never visited the leased real estate properties during 1994 and 1995. (*See* Stip. ¶¶ 13–16.) Although the parties do not contest the amount of time spent and nature of work performed by Plaintiff Mr. DeGuzman on each property, a detailed account of the time and effort devoted to each property is required for the Court's analysis.[1]

### 1. Properties Leased to Third Parties

#### a. Suite in Orlando, Florida

Plaintiff Mr. DeGuzman delegated management of this property to Enclave Suites—a third party entity. Plaintiff acknowledges that he never visited this property in either 1994 or 1995. (*See* Stip. ¶¶ 17–18.) Plaintiff states that he spent 12 hours each year for the two years reviewing financial statements and writing out checks for maintenance fees. (*See* Stip. ¶¶ 19–20.)

#### b. Townhouse in Staten Island, New York

During both 1994 and 1995, Plaintiff Mr. DeGuzman spent a total of 60 hours each

---

1. The following facts are based on deposition testimony. Plaintiff Mr. DeGuzman failed to maintain a written record detailing the amount of time he spent on each property during 1994 and 1995. (*See* Stip. 5, n. 1, ¶¶ 31, 76, 77.)

year collecting rent. (*See* Stip. ¶ 30.) Plaintiff further spent 10 hours each year inspecting the house's leaky roof and defective fence. (*See* Stip. ¶ 22–24.) Contractors were hired by Plaintiff to make repairs to the house's roof, fence and bathroom. (*See* Stip. ¶ 29.)

### c. House in Bloomfield, New Jersey

In 1994 and 1995, Plaintiff Mr. DeGuzman spent 40 hours each year collecting rent. (*See* Stip. ¶¶ 32, 34.)

### d. Apartment in Jersey City, New Jersey

In 1994, Plaintiff Mr. DeGuzman collected rent (20 hrs.); installed a wall (10 hrs.); and interviewed a prospective tenant (3 hrs.). (*See* Stip. ¶ 35.) In 1995, Plaintiff spent 23 hours managing the apartment. (*See* Stip. ¶ 36.)

### e. Condominium Units in Roselle, New Jersey

In 1994, Plaintiff Mr. DeGuzman spent a total of 137 hours managing the two condominium units. Plaintiff's tasks included showing the units to prospective tenants (60 hrs.); collecting rent (30 hrs.); inspecting a leaky toilet, arranging for a plumber, and inspecting the plumbing, paint and carpet repairs (25 hrs.); painting the units (10 hrs.); making monthly maintenance fee payments (5 hrs.); attending a homeowners' association meeting (4 hrs.); and installing carpet (3 hrs.). (*See* Stip. ¶ 37.)

In 1995, Plaintiff Mr. DeGuzman spent a total of 126 hours managing the two condominium units. Plaintiff's responsibilities included collecting rent (90 hrs.); filing eviction complaints (6 hrs.); attending eviction proceedings (12 hrs.); purchasing air conditioning units (10 hrs.); making monthly maintenance fee payments (5 hrs.); inquiring about unpaid rent (2 hrs.);

and arranging for the installation of a metal door (1 hr.). (*See* Stip. ¶ 39.)

### f. Condominium Unit in Atlantic City, New Jersey

In 1994, Plaintiff Mr. DeGuzman spent time inspecting, cleaning, and maintaining the condominium (30 hrs.) and attending a meeting of the condominium owners association (10 hrs.). (*See* Stip. ¶ 42.) In 1995, Plaintiff likewise spent time inspecting, cleaning, and maintaining the condominium (30 hrs.) and hired an attorney to resolve a property tax matter (1 hr.). (*See* Stip. ¶ 43.) In neither year did Plaintiff spend any time finding tenants for the condominium. Instead, this task was delegated to Ocean Club Realty—a third party entity. (*See* Stip. ¶ 46.)

## 2. Properties Not Leased to Third Parties

### a. Medical Office Condominium in Newark, New Jersey

Plaintiff Mr. DeGuzman spent 2 hours in 1994 as well as in 1995 at the City Hall in Newark paying property taxes. (*See* Stip. ¶¶ 48–49.)

### b. Vacant Bank in East Orange, New Jersey

Plaintiff Mr. DeGuzman spent 10 hours in 1994 as well as in 1995 visiting this site. (*See* Stip. ¶¶ 54–55.)

### c. Undeveloped Lot in West Caldwell, New Jersey

In 1994 as well as in 1995, Plaintiff Mr. DeGuzman spent a combined 20 hours on tasks relating to this property. Specifically, Plaintiff met with potential buyers interested in the property (12 hrs.); visited the New Jersey Department of Environmental Protection for a wetlands development permit application for the property

(6 hrs.); and wrote checks to the order of the attorney working on the permit application (2 hrs.). (*See* Stip. ¶ 56.)

3. Property Leased by Plaintiffs

   a. *Medical Office Suite in Newark, New Jersey*

In 1994, Plaintiff Mr. DeGuzman spent 111 hours performing tasks for the office. (*See* Stip. ¶ 60.) This included cleaning the office interior (72 hrs.); shoveling snow from the parking lot (30 hrs.); and investigating office burglaries (9 hrs.).

In 1995, Plaintiff Mr. DeGuzman spent 120 hours performing similar tasks for the office. (*See* Stip. ¶ 61.) This included cleaning the interior of the office (72 hrs.); shoveling snow from the parking lot (30 hrs.); investigating office burglaries (6 hrs.); repairing damaged windows caused by the burglaries (8 hrs.); and testifying in court regarding the burglaries (4 hrs.).

4. Projects Unrelated to Plaintiffs' Properties

In addition to the time Plaintiff Mr. DeGuzman spent on all the properties that both he and his wife owned, Plaintiff also spent 373 hours in each year of 1994 and 1995 on other property activities. This included listing and presenting homes for sale (3 hrs.); reading the real estate section of the *Newark Star Ledger* and *Wall Street Journal* (260 hrs.); viewing available real estate properties (104 hrs.); and consulting with real estate brokers regarding available properties (6 hrs.). (*See* Stip. ¶¶ 69, 71–74.)

5. Summary of Total Hours Spent on All Real Estate

In 1994, Plaintiff Mr. DeGuzman spent 332 hours on properties rented to third parties, 133 hours on properties not rented to third parties, and 373 hours on projects not directly related to any of the properties owned by Plaintiffs. In 1995, Plaintiff Mr. DeGuzman likewise spent 302 hours on properties rented to third parties, 142 hours on properties not rented to third parties, and 373 hours on projects not directly related to any of the properties owned by Plaintiffs.

*DISCUSSION*

A. DEFENDANT'S MOTION

Defendant argues that pursuant to 26 U.S.C. § 469, Plaintiffs are forbidden from deducting any losses they have incurred from passive activities, such as rental activities or trade or business activities, in which the Plaintiffs allegedly did not materially participate, and therefore summary judgment should be granted as a matter of law. Defendant articulates three main points justifying its proposition. Firstly, Defendant alleges that the work performed by Plaintiff Mr. DeGuzman with regards to the Newark medical offices failed to constitute a qualified "real property trade or business". More importantly, Defendant insists that Plaintiffs have failed to meet an exception otherwise available under the § 469 rule. Secondly, Plaintiff Mr. DeGuzman did not "materially participate" with regards to the New Jersey properties located in Bloomfield, Jersey City, or Atlantic City and likewise with regards to the Orlando, Florida or Staten Island, New York properties and therefore any activities engaged in with regards to these properties could not constitute activities in "real property trade or business". Lastly, Plaintiff Mr. DeGuzman's search for potential real estate properties to purchase did not rise to the level of "real property trade or business".

B. SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment pursuant to Fed.R.Civ.P. 56 is a

stringent one. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). Substantive law controls the inquiry into which facts are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

All facts and inferences must be construed in the light most favorable to the non-moving party. *See Peters v. Delaware River Port Auth. of Pa. and N.J.,* 16 F.3d 1346, 1349 (3d Cir.1994). Likewise, the court must resolve all reasonable doubts in favor of the nonmoving party when determining whether any genuine issues of material fact exist. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307, n. 2 (3d Cir.1983); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972).

It is important to note that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

Under the standards announced by the Supreme Court's trilogy in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48,

106 S.Ct. at 2510 (emphasis in original). If the moving party has made a properly supported motion for summary judgment, then the nonmoving party must come forward with specific facts to show that there is a genuine issue of material fact for trial. *Id.* at 248, 106 S.Ct. 2505. Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon the mere allegations or denials" of its pleadings, but must produce sufficient evidence that will reasonably support a jury verdict in its favor, *Id.* at 248–49, 106 S.Ct. 2505; *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring), and not just "some metaphysical doubt as to material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 860 (3d Cir.1990).

On the other hand, summary judgment will not be granted if the dispute over a material fact is "genuine," that is, if a reasonable jury could decide the issue in the non-movant's favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2505. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.; accord Ridgewood Bd. of Educ. v. N.E. ex rel.*

*M.E.*, 172 F.3d 238, 252 (3d Cir.1999) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## C. SECTION 469 OF THE INTERNAL REVENUE CODE

As previously mentioned, IRC § 469(a)(1)(A) forbids taxpayers from deducting any losses the taxpayer has incurred from passive activities. Passive activities include rental activity as well as any trade or business activity in which the taxpayer does not materially participate. *See* § 469(a), (c)(1), (2), (4). These rules were enacted to prevent taxpayers from using losses incurred from passive activities as deductions to be applied towards personal income or other active income earned during that tax year. *See* Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 209–215 (J.Comm.Print 1987). *See also* S. Rept. 99–313, at 713–746 (1985), 1986–3 C.B. (Vol.3) 1, 713–746. For purposes of Defendant's motion, this Court need only address passive rental activities.

"Rental activity is any activity where tangible property held in connection with the activity is used by customers or held for use by customers, and the gross income attributable to the activity represents amounts paid principally for the use of the tangible property." *Schetzer v. Commissioner*, 78 T.C.M. (CCH) 195 (1999) (citing sec. 469(j)(8); sec. 1.469–1T(e)(3)(I)(A), and (B), Temporary Income Tax Regs., 53 Fed.Reg. 5702 (Feb. 25, 1988)).

Although a rental activity is considered to be per se passive and therefore any such losses are ineligible to be used as tax deductions, § 469(c)(7)(B) provides an exception for rental activities which involve *real estate.* Under the aforementioned section, real estate owned by the taxpayer but rented to a third party is not considered passive if, and only if, the taxpayer meets two requirements:

> [M]ore than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates and such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

If both elements are met, the taxpayer may then deduct any losses the taxpayer has incurred from rental real estate.

## D. ANALYSIS

Defendant concedes that Plaintiffs spent a total of 838 hours in 1994 and 817 hours in 1995 on activities relating to real property holdings. (*See* Def. Brief 19.) Defendant's main challenge is that the hours spent by Plaintiff Mr. DeGuzman at the Newark properties, consisting of 113 hours in 1994 and 122 hours in 1995, should be discounted from the total hours spent on all the properties for tax deduction purposes because said hours fail to qualify as hours spent in "real property trades or businesses". (*Id.*) Consequently, Defendant contends that Plaintiffs have factually failed to establish that they performed more than 750 hours of services in "real property trades or businesses" for tax years 1994 and 1995, and therefore do not qualify for the exception to the 26 U.S.C. § 469 rule. Since Plaintiffs do not qualify for the exception, they may not use their passive losses in their real property holdings as deductions to "shelter" the substantial income Plaintiff Mrs. DeGuzman earned from her medical practice in 1994 and 1995. Hence, Defendant argues that

summary judgment should be granted as a matter of law.

■ IRC § 469(c)(7)(C) defines a real property trade or business as "any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business." For purposes of the Newark properties, the only sections of the aforementioned statute conceivably applicable are "operation" and/or "management". Thus, it must be determined whether, as a matter of law, the services rendered by Plaintiff Mr. DeGuzman to the Newark medical offices were offered as part of a "trade or business" in real property operation or real property management.

■ The Supreme Court has stated "that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit." *Commissioner v. Groetzinger,* 480 U.S. 23, 35, 107 S.Ct. 980, 987, 94 L.Ed.2d 25 (1987). This Court concludes that the services offered by Plaintiff Mr. DeGuzman were not rendered as part of a "trade" or "business" as those words are used in their ordinary, everyday senses. *See Crane v. Commissioner,* 331 U.S. 1, 6, 67 S.Ct. 1047, 1051, 91 L.Ed. 1301 (1947) (stating that "words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses.") *See also Commissioner v. Soliman,* 506 U.S. 168, 174, 113 S.Ct. 701, 705, 121 L.Ed.2d 634 (1992); *Malat v. Riddell,* 383 U.S. 569, 571, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966)(per curiam).

During years 1994 and 1995, Plaintiff Mr. DeGuzman did perform certain services for his wife's two medical facilities. Plaintiff Mr. DeGuzman states that for the medical office located on Clinton Avenue, which Plaintiffs leased, these services entailed cleaning the office interior (spending an average of one hour and twenty-three minutes each week) and shoveling snow during the winter season. Plaintiff Mr. DeGuzman also states that he provided assistance with the aftermath of a number of burglaries that had taken place. In particular, he repaired damaged windows caused by the burglaries and investigated and offered testimony regarding said burglaries. Plaintiff Mr. DeGuzman states that for the medical office they owned located on Mulberry Street, these services consisted of making a trip to the Newark City Hall to make payment on property taxes due.

■ Mindful of the Supreme Court's holding that one engaged in a trade or business does so with the primary intent of generating income or profit, *Commissioner v. Groetzinger,* 480 U.S. at 35, 107 S.Ct. at 987, none of the evidence put forth by Plaintiff Mr. DeGuzman demonstrates that he was in the "trade" or "business" of managing or operating the medical offices. Even though the bulk of Plaintiff's labor involved cleaning the office, Plaintiff Mr. DeGuzman acquiesces that he has never engaged in the "trade" or "business" of providing cleaning services. (*See* Stip. ¶ 64.) In fact, Plaintiff Mr. DeGuzman concedes that real estate professionals, such as himself, normally do not provide cleaning or maintenance services for professional offices and that he cleaned his wife's medical office on a purely voluntary basis. (*See* Stip. ¶¶ 62–63, 65.)

More importantly, it is significant that of the 113 hours Plaintiff Mr. DeGuzman spent in 1994 and the 122 hours he spent in 1995 on the Newark properties, all but two hours in each year were spent on the Clinton Avenue medical office, which was the office that was rented by Plaintiffs

from a lessor. In other words, the services performed by Plaintiff Mr. DeGuzman were performed on property that he and his wife did not own, and in fact paid to use. Absent any evidence to the contrary, there is no indication that the true owner of the office contracted with Plaintiff Mr. DeGuzman to have the latter "operate" or "manage" that medical office. Instead, it is the Court's conclusion that the services that were provided by Plaintiff Mr. DeGuzman were carried out gratuitously in a desire to aid his wife. Most certainly they fall far short of the Supreme Court's "for income or profit" trade or business definition in *Groetzinger*.

Based on this conclusion, the hours spent by Plaintiff Mr. DeGuzman at the Newark medical office, specifically the Clinton Avenue office, cannot be considered as time spent in "real property trades or businesses in which the taxpayer materially participates." These hours must therefore be subtracted from the total hours claimed by Plaintiff Mr. DeGuzman for all the real property holdings of the Plaintiffs.

As a result, for 1994, deducting the 111 hours spent on the Clinton Avenue property from the total of 838 hours spent on all their property holdings leaves a sum of 727 hours. Similarly, for 1995, discounting the 120 hours spent on the Clinton Avenue property from the total of 817 hours spent on all their property holdings leaves a sum of 697 hours. Plaintiffs have thereby failed to meet the 750 hour requirement in real property trade or business under IRC § 469(c)(7)(B) for years 1994 and 1995. Thus, Plaintiffs are barred from deducting the losses they have incurred from their real estate holdings. Because this conclusion prevents Plaintiffs from recovering as a matter of law and resolves the Defendant's motion for summary judgment, the Court need not reach the Defendant's remaining arguments.

### E. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as a matter of law.