T.C. Summary Opinion 2011-82


UNITED STATES TAX COURT


ARIS VALDIS JENDE AND MARILYN JANE JENDE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21304-09S.              Filed July 6, 2011.


Aris Valdis Jende and Marilyn Jane Jende, pro sese.

<u>Emly B. Berndt</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at

issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income tax of $10,330 for 2005 and $8,403 for 2006. Respondent also determined under section 6662(a) accuracy-related penalties of $2,066 for 2005 and $1,680.60 for 2006.

The parties agree that petitioners are entitled to deduct rental real estate losses on Schedule E, Supplemental Income and Loss, incurred in connection with the Vandalia, Ohio, vacation home in 2005 and the Cape Coral, Florida, vacation home for 2005 and 2006.[1] The issues remaining for decision are whether petitioners are entitled to deduct real estate losses on Schedule E in excess of those determined or agreed to by respondent and whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2005 and 2006.[2]

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference. Petitioners resided in Ohio when the petition was filed.

---

[1]Respondent determined in the notice of deficiency that pursuant to sec. 469(c)(7) petitioners are entitled to deduct for 2006 losses of $13,685 in connection with the Vandalia, Ohio, vacation property, and $297 in connection with the Fort Myers, Florida, timeshare.

[2]Adjustments to petitioners' itemized deductions are computational and will be resolved consistent with the Court's opinion.

## Background

Petitioners, Aris Jende (petitioner) and Marilyn Jende (Mrs. Jende), are retired educators. Petitioner retired as a school superintendent, and Mrs. Jende retired as an assistant superintendent of schools. They have invested in real estate for over 30 years, including the years at issue. In 2005 and 2006, in addition to their personal residence, petitioners owned interests in six residential properties.

Properties in Vandalia, Ohio, and Cape Coral, Florida, are homes that were unfurnished and rented to long-term tenants in 2005 and 2006. Petitioners owned a timeshare in Fort Myers, Florida, and condominiums in Gatlinburg, Tennessee, Pigeon Forge, Tennessee, and Destin, Florida. Petitioners deducted losses of $44,613 for 2005 and $45,131 for 2006 on their Schedules E in connection with the six residential rental properties.

The average stay in the Fort Myers timeshare and the condominium units in Gatlinburg and Pigeon Forge was less than 7 days in 2005. The average rental stay for the condominium unit in Destin was more than 7 days in 2005. The average stay for all three condominium units was less than 7 days in 2006. Petitioners maintained for 2005 and 2006 a Web site advertising the Gatlinburg and Pigeon Forge, Tennessee, condominiums that instructed interested persons to contact a "firm" to schedule reservations at the condominiums.

The Destin Condominium

Petitioners made one trip to the Crystal Sands condominium in Destin in 2005 and one in 2006. In both 2005 and 2006 petitioners were members of the Crystal Sands Owners Association (CSOA). The manager of CSOA was responsible for 277 condominium units (including petitioners' Destin, Florida, unit) in five different complexes in Destin, Florida. The CSOA manager spent several hours a week at petitioners' complex, but her main office was at another complex in Destin.

In connection with the condominium in Destin, petitioners entered into a seasonal property management agreement in 2004 with Abbot Resorts, Inc. (Abbot). Under the agreement, Abbot was to receive 28 percent of "base rental income" as a fee for its services, which included acquiring tenants, collecting rents, and managing the property. Abbot conducted a semiannual inspection in order to determine the maintenance condition and appearance of the units under its management. In addition to its normal housekeeping services, Abbot conducted a semiannual "deep, general interior housecleaning" of the units.

In 2005 and 2006 CSOA contracted with Resort Quest to secure renters for the Crystal Sands complex, including petitioners' unit. A Resort Quest representative was present part time at the complex in which petitioners' unit was located.

Petitioners reported management fees paid to either or both Abbot and Resort Quest of $5,551 for 2005 and $7,841 for 2006 in connection with the Destin property. Petitioners reported income from the Destin unit of $20,661 in 2005 and $29,081 in 2006.

The Gatlinburg Condominium

Petitioners made two trips to the Highlands condominium in Gatlinburg in 2005 and one in 2006. During the years at issue petitioners were members of the Highlands Owners Association (HOA). HOA is responsible for maintaining the exterior of the condominium complex in which petitioners' Gatlinburg condominium is located. During 2005 and 2006 HOA contracted with Werner Enterprises, Inc., to "operate" the 78-unit complex in which petitioners' unit was located. Petitioners deducted management fees of $6,069 for 2005 and $5,945 for 2006 in connection with the Highlands unit. Petitioners reported rental income from the unit of $17,341 for 2005 and $16,985 for 2006.

The Pigeon Forge Condominium

Petitioners visited the Whispering Pines condominium in Pigeon Forge three times in 2005 and once in 2006. During the years in issue petitioners were members of the Whispering Pines Owners Association (WPOA). WPOA hired Werner Enterprises, Inc. (Werner), to receive rental requests, assign renters, and assist owners. On December 12, 2006, petitioners signed an exclusive

rental management agreement with Resort Properties Management, LLC (Resort) regarding the Pigeon Forge condominium.

The agreement provided that Resort would receive 40 percent of petitioners' gross monthly receipts from rental income in return for their services. Among other provisions of the agreement, Resort received the exclusive right to: (1) Rent the property at rates it set; (2) make repairs at the owners' expense; (3) use the property for marketing through advertisement and promotional stays; (4) collect and remit rent less deductions; (5) provide maid service and supply paper products and cleaning products; (6) provide maintenance and security services; (7) actively promote and advertise the units within the development; and (8) operate and maintain a reservation system to process rental reservations for the premises.

Petitioners deducted management fees in connection with the Pigeon Forge condominium of $5,922 for 2005 and $6,066 for 2006. They reported rental income from the property of $13,797 for 2005 and $15,318 for 2006.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues

may shift to the Commissioner under section 7491(a).  Petitioners argue that the burden of proof has shifted to respondent because they have met the requirements of section 7491.  The Court, however, as discussed below, finds that petitioners have not met the requirements of section 7491(a) and the burden of proof does not shift to respondent.

Section 469 Passive Activity Losses

Section 162 allows deductions for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Section 212 allows deductions for all the ordinary and necessary expenses paid or incurred during the taxable year for the production of income or the management or maintenance of property held for the production of income.

If a taxpayer is an individual, however, the "passive activity loss" for the taxable year shall not be allowed.  Sec. 469(a).[3]  The term "passive activity loss" means the amount by which "the aggregate losses from all passive activities" exceeds "the aggregate income from all passive activities" for the taxable year.  Sec. 469(d)(1).  For purposes of section 469(a), "passive activities" are, with certain exceptions, activities involving a trade or business in which the taxpayer does not

---

[3]A loss disallowed under sec. 469(a) shall be treated as a loss allocable to the activity in the next taxable year.  Sec. 469(b).

"materially participate". Sec. 469(c)(1). The term "passive activity" generally includes any rental activity. Sec. 469(c)(2). Rental activity is any activity "where payments are principally for the use of tangible property." Sec. 469(j)(8).

An activity involving an average period of customer use of tangible personal property for 7 days or less is not treated as rental activity. Sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 54 Fed. Reg. 20535 (May 12, 1989). The average stay in the Fort Myers timeshare and the condominium units in Gatlinburg and Pigeon Forge was less than 7 days in 2005. Those activities are treated as nonrental trades or businesses.

The average rental stay for the condominium unit in Destin was more than 7 days in 2005 and was therefore a rental activity and a passive activity regardless of petitioners' level of participation.[4] The loss suffered in 2005 for the Destin condominium is a passive activity loss to which section 469(a) applies. The average rental stay for all three condominium units was less than 7 days in 2006. These activities are treated as non-rental trades or businesses for the year. Petitioners' trade or business activities are passive activities if they are trades or businesses in which petitioners did not "materially participate". Sec. 469(c)(1).

---

[4]Petitioners, however, have argued that they are covered by the real property trade or business exception under sec. 469(c)(7). See discussion infra pp. 16-20.

Respondent alleges that petitioners did not materially participate in their trade or business activities with respect to the Destin condominium and the Fort Myers timeshare in 2005 and the condominium units in Destin, Gatlinburg, and Pigeon Forge in 2006. Petitioners argue that they have materially participated in each real estate activity and that they have elected under section 469(c)(7) to treat all their interests in rental real estate as one activity.

Material Participation

Material participation means that the taxpayer is involved in the operations of the activity on a regular, continuous, and substantial basis. Sec. 469(h). Temporary regulations relating to the meaning of the term "material participation" in section 469(h)(1) provide that, in general, an individual shall be treated, for purposes of section 469 and the regulations thereunder, as materially participating in an activity for the taxable year if and only if: (1) The individual participates in the activity for more than 500 hours during such year; (2) the individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year; (3) the individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in

the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year; (4) the activity is a "significant participation" activity for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours; (5) the individual materially participated in the activity for any 5 taxable years (whether or not consecutive) during the 10 taxable years that immediately precede the taxable year; (6) the activity is a personal service activity, and the individual materially participated in the activity for any 3 taxable years preceding the taxable year; or (7) based on all of the facts and circumstances, the individual participated in the activity on a regular, continuous, and substantial basis during such year. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

In determining whether a taxpayer materially participated in an activity, the participation of a spouse shall be taken into account. Sec. 469(h)(5). In general, work done by an individual in connection with an activity in which he owns an interest is treated as participation in the activity. Sec. 1.469-5(f), Income Tax Regs.

According to petitioners, their condominium fees paid for hiring the resort manager, hiring the maintenance workers,

maintaining the common areas and exterior, maintaining the swimming pool, any kind of "replacements", and utilities and insurance for the complex, "not the individual units."

The parties have stipulated that petitioners compiled 2005 and 2006 "time logs" and narrative "trip activity logs" related to their activities in connection with the condominiums.  At trial respondent suggested that petitioners' compilations may not be contemporaneous.  Petitioner testified that they kept receipts, records, documentation activity, and "hour logs" that they "consolidate during tax time" and at a "later date" transferred to a formal log.

The time logs purport to provide a summary of the number of hours each petitioner spent on various activities in connection with five of their properties, including the three condominiums but excluding the timeshare in Fort Myers.  The trip activity logs purport to give for the condominiums a date and description of each category of activity for which hours are listed in the time logs for petitioner:  (1) Bank deposits, (2) phone log, (3) post office, (4) recordkeeping and tax preparation, (5) maintenance and repairs, (6) travel time, and (7) Web site maintenance and Internet research.  For Mrs. Jende the time logs and trip activity logs list hours for:  (1) Recordkeeping and tax preparation, (2) maintenance and repairs, and (3) travel time.

Work done by an individual in his capacity as an investor in an activity is not treated as participation in the activity for purposes of section 469 unless the individual is involved in the day-to-day management or operations of the activity. Sec. 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Investor activity includes but is not limited to studying and reviewing financial statements or reports on the operations of the activity; preparing or compiling summaries of the finances of the activity for the use of the individual; and monitoring the finances or operations of the activity in a nonmanagerial capacity. Id.

Petitioners were not involved in the day-to-day management of their condominiums as they paid substantial fees under contracts to Abbot and Werner or others for such services. The Court concludes that petitioners may not treat the hours they devoted to "Bank Deposits", "Post Office" and "Record Keeping & Tax preparation" as participation for purposes of section 469.

Petitioners treated all of their time traveling to and from the condominiums as "work" for purposes of determining their material participation in the condominium activities. The Court recognizes that travel in some circumstances can be "work" done in connection with a trade or business. The legislative history of section 469 suggests, however, that only participation that is integral to the operation of the business is to be counted for

purposes of the material participation test.  S. Rept. 99-313, at 732 (1986), 1986-3 C.B. (Vol. 3) 1, 732.  The Court finds that petitioners' travel to their properties was not integral to their operation and will not be considered work for purposes of determining their material participation in the condominium activities.  See Toups v. Commissioner, T.C. Memo. 1993-359.

The Court's examination of the time logs leads to the conclusion that the hours listed for "maintenance and repairs" are exaggerated.  The hours listed for maintenance and repairs for 2005 by each petitioner are exactly the same for two of the properties and differ by only 1 hour for the third.  For 2006 there is somewhat more divergence, but the hours remain substantially similar.  The duplication of hours by petitioners in this category appears to result in large part from the excessive number of hours the trip activity logs attribute to shopping for, designing with, discussing, viewing, and considering for the three condominiums various household items including:  Furniture, pictures, fabrics, decorations, kitchen appliances, dinnerware, and other items.

For example, in entries for March 5, 2005, each petitioner claims to have shopped for 11 hours related to the Pigeon Forge unit.  The following day, Sunday, March 6, 2005, time log entries show each petitioner spending 15-1/2 hours, not including lunch

or dinner, looking for decorations or pictures for the Gatlinburg condominium.

In another set of entries, for the Destin unit, petitioners claim that on June 4 each of them shopped for 6 hours. Each petitioner claims to have shopped on Sunday, June 5, 2005, for 11-1/2 hours followed by another 11-1/2 hour shopping day on Monday, June 6, 2005. According to petitioners' time logs, the June 6 marathon shopping day was followed by a day, June 7, in which each of them shopped for 9 hours. The time log indicates that on June 8 each petitioner shopped for 5-1/2 hours and on June 9 for 10 hours. That is a lot of shopping.

Petitioners did not submit any of the receipts, records, or documentation on which they say the logs were based to verify their stated extended shopping efforts. Petitioners' exaggerated claims of hours spent shopping cast doubt on the hours listed in the other entries in their time logs, and the Court finds them unreliable.

### Material Participation Test 1

Petitioners do not claim to have participated in any of the trade or business activities at issue for more than 500 hours for either 2005 or 2006.

Test 2

Petitioners' participation in the activities for the years at issue do not constitute substantially all of the participation of all individuals in the activities for the years at issue.

Test 3

The Court has determined that petitioners may not include as hours of material participation time spent on investor activities and travel. Petitioners' excessive claims of time spent on maintenance and repairs has rendered the claims unreliable, and therefore petitioners have not shown that they participated in each of their trade or business activities for more than 100 hours in 2005 and 2006.[5] Even if petitioners' participation exceeded 100 hours for each trade or business, they have not shown that it equaled or exceeded the participation of any other individual, including the management firms who ran the day-to-day operations of the units. See Barniskis v. Commissioner, T.C. Memo. 1999-258; Chapin v. Commissioner, T.C. Memo. 1996-56; sec. 1.469-5T(b)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

Test 4

Because petitioners cannot show that their participation with respect to each activity equaled or exceeded 100 hours for

---

[5]Destin was a rental, and thus passive, activity in 2005. Petitioners offered no evidence on their material participation in the operations of the Fort Myers timeshare for 2005 or 2006.

each year, they cannot meet the test 4 requirements.  See sec.
1.469-5T(c), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb.
25, 1988).

### Tests 5 and 6

The record contains no evidence that would support a finding
that petitioners meet test 5 or 6 for their trade or business
activities.

### Test 7

Petitioners cannot meet test 7 requirements for any of their
trade or business activities because they have not shown that
their participation in each activity exceeded 100 hours.  See
sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed.
Reg. 5725 (Feb. 25, 1988).

### Real Estate Professionals

Petitioners argue that even if they do not meet the
requirements for material participation for each property at
issue separately, they are real estate professionals and are
entitled to group their real estate activities for purposes of
the material participation test.

The general rule is that a rental activity is treated as a
per se passive activity regardless of whether the taxpayer
materially participates.  Sec. 469(c)(2), (4).  But under section

469(c)(7), the rental activities of a qualifying taxpayer[6] in a real property business, which includes rental activities, is not a per se passive activity under section 469(c)(2). Kosonen v. Commissioner, T.C. Memo. 2000-107; sec. 1.469-9(b)(6), Income Tax Regs. Rather, the qualifying taxpayer's rental activities are treated as a trade or business--subject to the material participation requirements of section 469(c)(1). Fowler v. Commissioner, T.C. Memo. 2002-223; sec. 1.469-9(e)(1), Income Tax Regs.

A taxpayer qualifies for the real property business election if: (1) More than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which he materially participates; and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which he materially participates. Sec. 469(c)(7)(B)(i) and (ii). In the case of a joint return, both requirements must be satisfied by the same spouse. Sec. 469(c)(7)(B).

For purposes of the 750-hour threshold, the Court looks at all of the taxpayer's rental activities to determine whether that requirement is satisfied. See DeGuzman v. United States, 147 F.

---

[6]A qualifying taxpayer is one who owns at least one interest in real estate and is in the real property business as described in sec. 469(c)(7)(C).

Supp. 2d 274 (D.N.J. 2001); see also <u>Fowler v. Commissioner</u>, <u>supra</u>; <u>Bailey v. Commissioner</u>, T.C. Memo. 2001-296. If the taxpayer does not materially participate in that activity, then that activity does not count towards the 750-hour threshold. <u>DeGuzman v. United States</u>, <u>supra</u>.

If the taxpayer is a qualifying taxpayer, then the general rule is that each interest in rental real estate is treated as a separate activity unless the taxpayer elects to treat all interests in rental real estate as one activity. Sec. 469(c)(7)(A); <u>Fowler v. Commissioner</u>, <u>supra</u>. The determination of whether the taxpayer materially participated in his real property business pursuant to section 469(c)(1) must be made with respect to each rental activity unless the taxpayer made the election to treat all of his rental activities as a single activity. <u>Fowler v. Commissioner</u>, <u>supra</u>; <u>Shaw v. Commissioner</u>, T.C. Memo. 2002-35; sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs.

With respect to the real property business election, section 1.469-9(g), Income Tax Regs., provides that a qualifying taxpayer makes the election to aggregate his activities by filing a statement with the taxpayer's original income tax return for the taxable year. The statement must contain a declaration that the taxpayer is a qualifying taxpayer for the taxable year and is

making the election pursuant to section 469(c)(7)(A).  Sec. 1.469-9(g)(3), Income Tax Regs.

The Court has determined that a taxpayer must clearly inform the Commissioner of his intent to make the real property business election.  See Kosonen v. Commissioner, supra (citing Knight-Ridder Newspapers Inc. v. United States, 743 F.2d 781, 795 (11th Cir. 1984)).  To make the election, "'the taxpayer must exhibit in some manner * * * his unequivocal agreement to accept both the benefits and burdens'" of section 469.  Id. (quoting Young v. Commissioner, 83 T.C. 831, 839 (1984), affd. 783 F.2d 1201 (5th Cir. 1986)).  A taxpayer has not made the election if it is not clear from the return that the election has been made. See id. (citing Young v. Commissioner, supra at 1206).  The Court has also stated that a taxpayer's intent to make the election is irrelevant when he has failed to do so.  See id.

Petitioner testified that in 1998 petitioners discussed with their accountant the desirability of treating all their rental properties as "one entity" or a group.  According to petitioner, they agreed to file an election to be so treated.  Petitioners stated in their pretrial memorandum, however, that they believe the election was made by their accountant in 2001.  Respondent represented that he searched his records back to 2000 and was unable to find an election.  Petitioners were unable to produce any documentary evidence of making the election.

If petitioners could show that they made a proper election, it might affect the treatment of the Destin property for 2005. It would not, however, affect the treatment of the timeshare and the other condominiums for 2005 or any of the properties for 2006. The average stay in the Fort Myers timeshare and the condominium units in Gatlinburg and Pigeon Forge was less than 7 days in 2005. The average rental stay for all three condominium units was less than 7 days in 2006. These activities were trades or businesses and not rental activities. See sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 54 Fed. Reg. 20535 (May 12, 1989). Because they were not rental activities, petitioners cannot properly include them in an election under section 469(c)(7) to treat all interests in rental real estate as a single rental real estate activity. See Bailey v. Commissioner, supra; sec. 1.469-9(e)(3), Income Tax Regs.[7]

The Court concludes that petitioners' losses from the named properties are passive activity losses.

Offset for Rental Real Estate Activities

Section 469(i), with respect to rental real estate activities in which an individual actively participates, provides that the section 469(a) disallowance will not apply to a portion

---

[7]Petitioners did not treat their contested activities as trade or business activities and therefore did not elect to group their trade or business activities for purposes of sec. 469 and sec. 1.469-4, Income Tax Regs. Cf. Krukowski v. Commissioner, 279 F.3d 547, 552 (7th Cir. 2002), affg. 114 T.C. 366 (2000).

of the individual's passive activity losses.  An annual maximum of one $25,000 offset is allowed for all of a taxpayer's rental real estate activities.  Sec. 469(i)(2), (5).  This exemption begins to phase out where the taxpayer's adjusted gross income (AGI) exceeds certain levels.  Sec. 469(i)(3).  The phaseout in petitioners' case is 50 percent of the amount by which their AGI (computed without regard to passive activity losses) exceeds $100,000.  See sec. 469(i)(3)(A), (F)(iv).

For 2005 petitioners' AGI computed without regard to passive activity losses was $143,381 ($98,768 + $44,613).  Their AGI so computed was $43,381 in excess of $100,000.  Reducing the $25,000 offset by 50 percent of $43,381, or $21,690.50, resulted in an allowance by respondent of a $3,310 loss.

The parties have since agreed, however, that petitioners are entitled to the losses from the Cape Coral property of $5,435 and the Vandalia property of $1,684.  The agreement of the parties reduces petitioners' passive activity losses from $44,613 to $37,494 ($44,613 - $7,119).  Under the agreement, petitioners' adjusted AGI computed without regard to passive activity losses is $136,262.  Their AGI so computed is $36,262 in excess of $100,000.  Reducing the $25,000 offset by 50 percent of $36,262,

or $18,131.50, results in an allowable loss under section 469(i) for 2005 of $6,869.[8]

All of the losses at issue in 2006 were from petitioners' nonrental trades or businesses and therefore do not qualify for the offset for rental real estate activities under section 469(i).

Accuracy-Related Penalty

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, affd. 378 F.3d 432 (5th Cir. 2004). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or the addition to tax is appropriate. Higbee v. Commissioner, supra at 446.

Respondent determined that for 2005 and 2006 petitioners underpaid a portion of their income taxes due to negligence or disregard of rules or regulations or a substantial understatement of income tax.

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to any one of various

---

[8]In 2005 the Destin condominium was rental real estate and accounted for a loss of $19,025.

factors, including negligence or disregard of rules or
regulations and a substantial understatement of income tax. See
sec. 6662(b)(1) and (2). Negligence includes any failure to make
a reasonable attempt to comply with the provisions of the
Internal Revenue Code, including any failure to keep adequate
books and records or to substantiate items properly. See sec.
6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

A substantial understatement includes an understatement of
income tax that exceeds the greater of 10 percent of the tax
required to be shown on the return or $5,000. See sec. 6662(d);
sec. 1.6662-4(b), Income Tax Regs.

Section 6664(c)(1) provides that the penalty under section
6662(a) shall not apply to any portion of an underpayment if it
is shown that there was reasonable cause for the taxpayer's
position and that the taxpayer acted in good faith with respect
to that portion. The determination of whether a taxpayer acted
with reasonable cause and in good faith is made on a case-by-case
basis, taking into account all the pertinent facts and
circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most
important factor is the extent of the taxpayer's effort to assess
his proper tax liability for the year. Id.

Petitioners have a substantial understatement of income tax
for each of the years in issue since the understatement amount
exceeds the greater of 10 percent of the tax required to be shown

on the return or $5,000. The Court concludes that respondent has produced sufficient evidence to show that the accuracy-related penalties under section 6662(a) are appropriate for both years.

The accuracy-related penalties will apply unless petitioners demonstrate that there was reasonable cause for the underpayments and that they acted in good faith with respect to the underpayments. See sec. 6664(c). Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer."

Petitioners did not show that there was reasonable cause for, and that they acted in good faith with respect to, the underpayments.

Respondent's determination of the accuracy-related penalties under section 6662(a) for 2005 and 2006 is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.