T.C. Summary Opinion 2014-112

UNITED STATES TAX COURT

BILL LEWIS, SR., AND JOCELYN IRENE KNOWLES-LEWIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17296-13S.                    Filed December 23, 2014.

Bill Lewis, Sr., and Jocelyn Irene Knowles-Lewis, pro sese.

Julie L. Payne and Connor J. Moran, for respondent.

SUMMARY OPINION

KERRIGAN, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

Respondent determined deficiencies with respect to petitioners' Federal income tax for tax years 2010 and 2011 as follows:

| Year | Deficiency |
|------|-----------|
| 2010 | $6,480 |
| 2011 | 4,425 |

After concessions,[1] the only issue for our consideration is whether a portion of petitioners' loss deductions claimed on Schedule E, Supplemental Income and Loss, should be disallowed for 2010 and 2011 under the passive loss rules of section 469.

## Background

Some of the facts have been stipulated and are so found. Petitioners resided in California when they filed the petition.

---

[1]Petitioners conceded that they received unreported taxable interest income of $168 and $200 for tax years 2010 and 2011, respectively.

Petitioner husband is a retired Vietnam veteran. During his service in the Marine Corps he sustained injuries that left his right arm 50% disabled and his feet 30% disabled, requiring him to wear orthopedic shoes. The Department of Veterans Affairs determined that petitioner husband is 60% disabled, and he receives monthly veterans disability assistance. He also needs knee replacement surgery and has difficulty seeing. During 2010 he was 63 years old. Petitioner wife was employed at Provident Credit Union during the years in issue.

Petitioners own a triplex apartment that is next door to their residence. The property has a washhouse. In the back there are six 64-gallon recycling bins and also several large walnut trees. The fact that the property is on a route to a nearby recycling center results in greater frequency of the homeless population passing by, going through the garbage, and sleeping on the property.

Petitioners began renting out the triplex units to tenants in 2007. Petitioners do not permanently employ anyone to aid in the process of renting out the units or maintaining the property. Rather, petitioner husband personally performs the administrative tasks, routine maintenance, and repairs.

Administrative Tasks

Petitioner husband acts as the landlord. During the years in issue he was available to his tenants 24 hours a day when they had a lockout or needed repairs. He also collected the rent checks. Each of petitioners' tenants paid his or her rent on a different day of the month. When petitioner husband collected each tenant's rent he would drive to the bank to deposit the funds. Upon his return home he would log the payment in his computer records. He also spent time each month performing various computer tasks, including generating notices and correspondence with tenants.

In 2011 petitioner husband spent time instituting an unlawful detainer action against one of his tenants.

Routine Maintenance

Petitioner husband performed the same weekly routine during each of the years in issue without ever taking a vacation. Each morning he would walk around and inspect the grounds for trash left behind by the homeless population. On Mondays he would clean the washhouse. On Tuesdays and Fridays he would landscape and clean the outside of the buildings, the garbage cans, and the front yard. Depending on the season, this chore would also require him to rake fallen leaves from the several walnut trees and sweep the fallen walnuts and shells left

behind by squirrels.  On Wednesdays he would take all of the recycling bins one by one to the curb.  On Thursdays he would retrieve the recycling bins, one by one, that he placed at the curb the night before.

Repairs

Petitioners' tenants would contact petitioner husband whenever they had a complaint or a repair request.  Petitioner husband would then schedule a repair. Upon arrival, the repairperson would knock on petitioner husband's door and he would lead the repairperson to the unit needing the service.  Upon completion of the repair, petitioner husband would inspect the work or confirm with the tenant that it had been completed properly.  In 2010 petitioner husband facilitated the repair of a faulty toilet, a clogged kitchen sink, and a broken heater.  In 2011 he facilitated the repair of a faulty heater, a leaking gas pipe, a broken glass window, a faulty electrical wire, and a faulty oven.

At the end of 2009 petitioners evicted one of their tenants who was a smoker and who had left the four-bedroom apartment in poor shape and with brown residue all over the walls.  In early 2010 petitioner husband spent time scrubbing the walls clean and otherwise preparing the unit for a new tenant. Additionally he facilitated the installation of new carpet by researching carpet, purchasing it, preparing the unit to have the carpet removed, scheduling and

overseeing the carpet removal, and then scheduling and overseeing the installation of the new carpet.

Tax Returns

Petitioner husband personally prepared petitioners' timely filed Forms 1040, U.S. Individual Income Tax Return, for both 2010 and 2011. On Schedule E of the 2010 return petitioners reported rents received of $49,792 and claimed a total real estate loss deduction of $53,284. On Schedule E of the 2011 return, petitioners reported rents of $53,479 and claimed a total real estate loss deduction of $39,389.

In the statutory notice of deficiency the respondent disallowed $35,759 and $21,846 of petitioners' deductions for 2010 and 2011, respectively, which are the amounts by which their deductions exceeded the allowable section 469(i) offset after application of the phaseout provisions of section 469(i)(3).

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a), in certain circumstances, the burden of proof may shift from the taxpayer to the Commissioner. Petitioners have not claimed or

shown that they meet the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212. Section 469(a) generally disallows the passive loss or credit of an individual taxpayer for the taxable year and treats it as a deduction or credit allocable to the same activity for the next taxable year. Sec. 469(a) and (b). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for such year. Sec. 469(d)(1). In general, a passive activity is any activity which involves the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A taxpayer is treated as materially participating in an activity only if his or her involvement in the operations of the activity is regular, continuous, and substantial. Sec. 469(h)(1). Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2).

Section 469(c)(7) provides an exception to the rule that a rental activity is per se passive. The rental activities of a taxpayer in a real property trade or business who meets certain designated requirements (a real estate professional) are not subject to the per se rule of section 469(c)(2). Sec. 469(c)(7)(A); see Kosonen v. Commissioner, T.C. Memo. 2000-107, slip op. at 9; sec. 1.469-9(b)(6), (c)(1), Income Tax Regs. Rather, the rental activities of a real estate professional are subject to the material participation requirements of section 469(c)(1). See sec. 1.469-9(e)(1), Income Tax Regs. A taxpayer qualifies as a real estate professional for a taxable year if: (1) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (2) the taxpayer performs more than 750 hours of service during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(i) and (ii). In the case of a joint tax return, either spouse must satisfy both requirements. Sec. 469(c)(7)(B) (flush language). Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2).

Petitioners contend that petitioner husband qualified as a real estate professional during the tax years in issue. Because petitioner husband was not

otherwise employed, we need turn our attention only to the second part of the test in section 469(c)(7)(B).

1. <u>Material Participation</u>

If the taxpayer does not materially participate in a particular real property trade or business, the time he devotes to that activity does not count toward the 750-hour requirement. Sec. 469(c)(7)(B)(ii); <u>see</u> <u>DeGuzman v. United States</u>, 147 F. Supp. 2d 274 (D.N.J. 2001). We must first determine whether petitioner husband materially participated in a real property trade or business. "[A]ny real property * * * rental * * * trade or business" counts as a real property trade or business. Sec. 469(c)(7)(C). Petitioner husband clearly participated in a rental trade or business.

A taxpayer is considered to have materially participated in a particular real estate trade or business if one of seven tests set forth in the regulations is met. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5729 (Feb. 25, 1988); sec. 1.469-9(b)(5), Income Tax Regs. One test, set forth in section 1.469-5T(a)(2), Temporary Income Tax Regs., <u>supra</u>, is most relevant here: "The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year."

Petitioner husband testified that he performed almost all of the necessary work related to the rental of the triplex himself. He collected the rents, maintained the property daily and weekly, and handled all maintenance requests. Petitioners did not have any employees. At times petitioner husband hired contractors to perform specified work; these instances were infrequent and insignificant compared to the daily work that he performed. See Fitch v. Commissioner, T.C. Memo. 2012-358, at *24, supplemented by T.C. Memo. 2013-244. We find that petitioner husband satisfies this test because his participation constituted substantially all of the participation in the rental of the triplex. Petitioner husband was a creature of habit. He materially participated in a real estate trade or business because his activities were regular, continuous, and substantial.

2.    750-Hour Requirement

We next must determine whether petitioner husband performed more than 750 hours of service during each taxable year per the requirement of section 469(c)(7)(B)(ii).

All of a taxpayer's real estate trades or businesses in which he materially participates are taken into account to determine whether the 750-hour requirement is satisfied. See sec. 469(c)(7)(B)(ii). A taxpayer may establish hours of participation by any reasonable means. Sec. 1.469-5T(f)(4), Temporary Income

Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Contemporaneous daily reports are not required if the taxpayer can establish participation by other reasonable means. Id. Reasonable means includes "appointment books, calendars, or narrative summaries" that identify the services performed and "the approximate number of hours spent performing such services". Id. We have noted previously that we are not required to accept a postevent "ballpark guesstimate" or the unverified, undocumented testimony of taxpayers. See, e.g., Moss v. Commissioner, 135 T.C. 365, 369 (2010); Lum v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

While petitioners did not provide a contemporaneous daily report, petitioner husband and petitioner wife each provided a narrative summary regarding petitioner husband's activities and the approximate number of hours spent performing these activities. Petitioner husband and petitioner wife testified credibly that because of petitioner husband's disabilities all of the activities took him significantly longer than might ordinarily be expected.

Regarding his routine repair activities, petitioner husband testified that his daily morning inspection of the property took at least half an hour, or 3-1/2 hours each week. He testified that his Monday washhouse cleaning took three hours as it required him to haul a heavy bucket of water and perform the manual labor of

cleaning. He testified that each Wednesday it took him at least an hour to haul all six of the recycling bins from the back of the triplex to the curb and that it took the same amount of time each Thursday to return them. He testified that his landscaping and cleaning activities each Tuesday and Friday also took two hours or more, depending on the season. Further, he credibly testified that he followed a set routine, week after week, without taking any vacations.

In addition to their testimony about the time spent on the routine repairs, petitioners also provided testimony and receipts verifying the time petitioner husband spent in administrative work. Petitioner husband testified that each of his tenants paid rent on a different day and that as soon as he received the rent he would take it to the bank to deposit it and then return home and input the transaction in his computer records. He testified that each of these trips took him about an hour. The record also establishes that petitioner husband spent time each year generating various correspondence with the tenants, including initiating an unlawful detainer action in 2011.

Petitioners also provided credible testimony relating to petitioner husband's involvement in any needed repairs. Each time a tenant needed a repair the tenant would contact petitioner husband, who would facilitate the entire event. The record establishes that these occasions arose three times in 2010 and five times in

2011. Additionally, in 2010 petitioner husband testified that he personally prepared a vacant four-bedroom unit for rental by scrubbing the walls, cleaning the unit, and facilitating the purchase and installation of new carpet.

Respondent contends that petitioner husband's estimation of the time it took him to perform all of these activities is overstated and that it is highly unusual for the owner of a single property to spend so much time on these activities. While respondent's contentions may be accurate for most individuals, petitioner husband was aged 63-64 during the years in issue and was a 60% disabled veteran. We find petitioners' testimony as to the time it took petitioner husband to complete these various tasks credible.

On the basis of the record before us, including petitioners' credible testimony, we find that petitioner husband performed services for more than 750 hours each year. To arrive at this conclusion we calculated petitioner husband's time spent performing routine maintenance as follows:

| Description | Hours/week |
| --- | --- |
| Daily inspection | 3.5 |
| Washhouse cleaning (Monday) | 3.0 |
| Landscaping and cleaning (Tuesday) | 2.0 |

| | |
|---|---|
| Recycle bins (Wednesday) | 1.0 |
| Recycle bins (Thursday) | 1.0 |
| Landscaping and cleaning(Friday) | 2.0 |
| Total hours/week | 12.5 |
| Total hours/year | 650 |

We find that petitioner husband spent 650 hours per year on routine maintenance alone. Adding in 36 hours each year for the 3 hours each month that petitioner husband spent depositing the rent checks (3 hours × 12 months = 36 hours per year) and the additional hours spent on repair facilitation, tenant correspondence, and the other tasks reflected in the record, it is clear that petitioner husband easily spent more than the required 750 hours performing services each year. Therefore, petitioner husband materially participated and petitioners' rental activity for the years in issue was not passive for the purpose of section 469(c)(1)(B).

We find that for the years in issue petitioner husband has established that he satisfies the requirements to qualify as a real estate professional under section 496(c)(7).

Any contentions we have not addressed are irrelevant, moot, or meritless.

Decision will be entered under

Rule 155.
